THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JACOB J. CIEMIENGO AND GEORGE HILDEBRAND, PLAINTIFFS IN ERROR.

Argued March 19, 1936—Decided May 14, 1936.

For the plaintiffs in error, *Jay B. Tomlinson* and *Stanley K. Heilbron.*

For the defendant in error, *Howard Eastwood,* prosecutor of the Pleas.

The opinion of the court was delivered by

BODINE, J.   The plaintiffs in error (hereinafter called defendants) were convicted of murder in the first degree. They twice confessed the crime.   The proofs showed that the murdered man was killed by bullets fired from a revolver owned by the defendant Ciemiengo.   This was later found at his home with three empty shells in the chamber.   Two of the shots fired had entered the body of the deceased, the other went wild but was located.   Facts and circumstances proved at the trial strongly corroborate the confessions.

Assignments of error neither argued nor referred to in the brief will not be considered.

(1) It is suggested that the examination by the State of the witnesses, Therrien and Malseed, was improper.   Not so. These witnesses were among the first to arrive at the home of the deceased.   Therrien had gone to the house to purchase eggs, but discovered the dead body.   He immediately left and sought out his neighbor, Malseed, who returned with him to the place.   The examination complained of was as to whether or not they had observed blood running.   The state, at the trial, surprised by testimony different from that contained in prior written statements made by each of the witnesses, was able to neutralize an adverse effect.   *State* v. *D'Adame,* 84 *N. J. L.* 386; *State* v. *Bassone,* 109 *Id.* 176.

(2) It is argued that there was error in limiting the cross-examination of a medical expert so as to preclude a question as to whether the wound in the neck was in the part of the body ordinarily clothed.   The medical witness had made a post mortem examination.   At that time there was no clothing upon the body.   The witness did not appear to have any knowledge as to the deceased's clothing.   There was an abundance of proof as to the condition of the deceased's body

at the time the murder was discovered, which was very presently after the occurrence. In no sense does it appear that the defendants were prejudiced by the ruling, nor can we see how the question was material or proper.

(3) When the police officers arrived at the scene of the murder, they found that the deceased had not taken his newspaper from the letter box. The defense contended that this indicated that the deceased had died perhaps the day before the discovery of the body. The State having offered proof otherwise, was justified in showing that on other occasions he had failed to promptly remove his mail from the letter box.

(4) There was an abundance of evidence to support the ruling of the trial court that the confessions were voluntary. The rule is that such finding is not reviewable on error, if there be any legal evidence to support it. *State* v. *Compo,* 108 *N. J. L.* 499; *State* v. *Favorito,* 115 *Id.* 197.

(5) We can see no error in excluding testimony as to whether or not the kitchen table was set for supper. The question, as framed, was not proper cross-examination, and even if it were, we fail to see where there was any prejudice by the exclusion. Photographs admitted in evidence, and other testimony, clearly demonstrated the precise arrangements of the interior of the house, and particularly the kitchen, where the murder was committed.

(6) The trial court quite properly checked the cross-examination of the state's witness, Zapolsky, as to immaterial matters not related in any sense to the subject of his direct examination.

(7) The defendants had both confessed that they had gone to the deceased's home to rob him and one of them had shot him in the presence of the other pursuant to a plan. Proof that they knew large sums of money had been upon his person was both material and relevant to the issue tried.

(8) The witness Sampson appeared to have no special knowledge from which he could testify as to whether or not the poultry on decedent's farm appeared hungry. The question was directed as to their appearance the day after the shooting. Such examination can serve no useful purpose.

(9) If the cross-examination of defendant's witness, Moller, was improper, and we doubt it, the defendants were not prejudiced thereby because the negative answer cured any possible harm in the question complained of.

(10) The cross-examination of the defendant Ciemiengo was not designed to and did not tend to show guilt of collateral crimes. It had but a single purpose, and that was to check the accuracy of the defendant's testimony as to what occurred at the time of his arrest.

(11) The court charged the jury as follows: "If you find from the evidence, and you are satisfied beyond a reasonable doubt, as I shall hereinafter define to you, that the defendants in this case were engaged in perpetrating or attempting to perpetrate a robbery and while so doing killed the deceased, you should find a verdict of murder in the first degree." The case was tried on the theory that the killing was done while attempting to perpetrate a robbery. This is murder in the first degree under section 107 of the Crimes act. 2 *Comp. Stat., p.* 1780. We fail to see any error in that portion of the charge complained of.

(12) There was no error in the trial court stating that the testimony of the ballistic expert, Captain Jones, was entitled to great respect. It so appears in the record. The rule in this state is, that it is always the right, and often the duty of the trial judge to comment on the evidence and give the jury his impression of its weight and value. *State* v. *Overton,* 85 *N. J. L.* 289; *State* v. *Hauptmann,* 115 *Id.* 412.

(13) At the oral argument, the thirteenth point was abandoned. We, nevertheless, have examined it. It possesses no merit.

(14) Lastly, it is argued that the verdict was against the weight of evidence. Not so. The murder appears to have been brutally and deliberately conceived in order to perpetrate a robbery. Not only have we the admissions of the defendants but an abundance of corroboration of every incident related by them.

The judgment will be affirmed.

406

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 13.

*For reversal*—None.